UNITED STATES DISTRICT COURT FOR THE
Eastern District of Texas



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS
JAN 17 2020
BY DEPUTY_____

| | | |
|---|---|---|
| CRAIG CUNNINGHAM,<br>Plaintiff,<br><br>v.<br><br>Technologic USA, Inc.<br>Defendant | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case **4:20cv45-RWS-CAN** |

## Plaintiff's Original Complaint

### Parties

1. The Plaintiff is Craig Cunningham and natural person and was present in Texas for all calls in this case in Collin County.

2. Technologic USA Inc., is a Defunct Wyoming Corporation and can be served at 109 E 17th Street ste 5039, Cheyenne, WY 82001 or via corporate officer or via secretary of state.

3. John/Jane Does 1-4 are other liable parties currently unknown to the Plaintiff.

### JURISDICTION AND VENUE

4. <u>Jurisdiction</u>. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim: arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds

little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

5. **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendant because the corporate officers and managers of the company do business in this district and have repeatedly placed calls into Texas and to Texas phone numbers.

6. This Court has specific personal jurisdiction over the defendants because the calls at issue were sent by or on behalf of the defendants into this district.

7. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls originated from this District and because the defendants reside in this District.

8. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above named defendants to the Plaintiff from this district.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

9. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without

the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

18. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

21. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the

TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code 305.053

22. The Texas Business and Commerce code has an analogus portion that is related to the TCPA and was violated in this case.

23. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### FACTUAL ALLEGATIONS

24. The Plaintiff has recieved at least 198 calls over several years to his cell phones, 615-331-7262, 615-212-9191, and 615-348-1977 without consent and not related to an emergency purpose selling all manner of products from alarm systems to MLM get rich quick schemes to travel clubs, debt relief services, and outright attempts at fraud.. The entity Technologic USA was intentionally designed as a 100% illegal dialing platform for non-compliant telemarketers to make untraceable calls by the millions of calls each day. The calls are alleged below in Exhibit A.

25. Technologic USA, Inc. no longer maintains a registered agent in Wyoming and thus must be served via secretary of state. Officially, Technologic USA, Inc ceased being a legal entity in 2016 as the corporation was administratively dissolved and their registered agent resigned in 2017. Unoffically, Technologic USA, Inc. continues to

operate to this day without being a recognized legal entity in any state.

## Evidence of personal jurisidiction in Texas

26. The Plaintiff obtained multiple call detail records showing that the defendant was placing calls to Texas based area codes. For example, on 4/22/2015, a calls were placed to 210-863-9772, 210-254-6347, 210-833-4111, 210-837-2424 all San Antonio based numbers. Additionally, on the very same day in the same blast of calls, calls were placed to 214-532-9596, 214-660-3298, 214-636-5336, and 214-869-1098, all Dallas area based numbers. Furthermore, on the same day, calls were placed to 713-530-3392, 713-775-5692, 713-371-8355, and 713-449-1119, all Houston area based phone numbers.

27. These are a brief sampling of 10's of thousands of calls placed daily that were placed generally in batches of 50,000 calls+ at once, of which multiple calls were directed at Texas based phone numbers and Texas residents indicating the defendant knew they would be calling in to Texas and soliciting Texas consumers.

28. In summary, the Plaintiff recieved at least 199 (Ex A) calls by Technologic and Technologic has conducted business for at least the past 5 years with a California based long distance carrier named Connexum, LLC.

29. Based on the foregoing allegations, this court has specific personal jurisdiction over Defendant Technologic USA.

## Calls placed by Technologic USA

30. Mr. Cunningham received multiple calls from a variety of spoofed caller ID's that contained a pre-recorded message and were initiated using an automated telephone dialing system. The calls were on behalf of a variety of illegal telemarketers

spamming the Plaintiff and likely almost every other consumer in the USA. The calls generally had a delay of 3-4 seconds of dead air before an audible tone connected the Plaintiff to a representative, indicating the calls were initiated using an ATDS in violation of 47 USC 227(b).

31. In total, the Plaintiff recieved 199 calls detailed below in exhibit A. These call records and deposition testimoney from Christopher Hall, (Ex B) a 30(b)(6) rep of Connexum, LLC a long distance carrier indicate the calls were placed by Technologic, LLC, but in reality, the money is being paid to Connexum from Technologic USA, Inc. There have been various names thrown around such as Technologic Inc., Technologic, LLC, and Technologic USA, Inc., but the actual legal entity through with funds are being passed to and from is Technologic USA, Inc.

32. Plaintiff notes that while the Deposition testimoney of Christopher Hall and records show "Technologic, LLC", in reality the money is being paid to Connexum, from a Wells Fargo Bank account titled in the name of Technologic USA, Inc (ex H). For example in May 2015, there were multiple transaction sent to Connexum, LLC from Technologic USA, Inc., in the amount of $30,324 on 5/8/2015 and $28,329 on 5/12/2015. Plaintiff notes there was also a payment on 5/29/2015 from Mike Montes and Tollfreezone.com in the amount of $8,000. This indicates that despite the various names being used by the various parties referencing Technologic, LLC or Technologic, Inc., in reality Technologic USA, Inc., is the one and only entity that is actually being referenced.

### Knowing and Willful violations and violations of DNC requests

33. The Plaintiff had repeatedly sued multiple customers of Defendant Technologic

including Select Student Loan Help, LLC (Cunningham v Select Student Loan Help, 3:15-cv-00554, M.D. Tennessee 2015) , Alliance Security (Cunningham v Alliance Security 3;14-cv-00769, M.D. Tennessee 2014), and Michael Montes (Cunningham v Michael Montes 3:16-cv-00761 W.D. Wisconsin 2016), owner of Tollfreezone.com, Inc., a telemarketer that uses Defendant Technologic to place calls according to sworn deposition testimony by Michael Montes. (Ex B).

34. The Plaintiff notes that these telemarketers were so bad that Select Student Loan Help was sued by the FTC (Ex C) and Alliance Security was sued by the FTC twice for violating Federal telemarketing laws (Ex D and E). Michael Monts has been sued by the attorney general of Missiouri (Ex F) and fined by the Mississippi public utility commission for making illegal telemarketing calls (Ex G).

35. These are the absolute worst telemarketers and the one common element is that they are using a stealth telemarketing platform purpose built and designed to facilitate illegal telemarketing calls.

36. Michael Montes stated that he has stopped taking on telemarketing clients because of the lawsuits filed against him by the Plaintiff (page 42 of the transcript, Ex J) and further stated that "People who threaten lawsuits or actually file lawsuits" (page 90 of the transcript) are added to the "Militant DNC list" which is maintained by Technologic.

37. Despite these lawsuits and claims by Michael Montes that the Plaintiff is on a litigator list known as the "Militant DNC list" calls continued. Defendant Technologic has been on notice since at least 2014 that the Plaintiff did not want to recieve additional telemarketing calls.

38. Each and every call was initiated using a spoofed caller ID, and each and every telemarketer the Plaintiff spoke with failed to properly identify themselves and the parties they were calling on behalf of in violation of 47 USC 227(c)(5) as codified by 47 CFR 64.1200(d) and the Texas business and commerce code 305.053.

39. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call failed to identify the telemarketers and parties they were calling on behalf of. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy. These actions violate 47 USC 227(c)(5) as codified by 47 CFR 64.1200(d)

40. Mr. Cunningham has a limited data plan. Incoming calls chip away at his monthly allotment.

41. Mr. Cunningham has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

42. No emergency necessitated the calls

43. Each call was sent by an ATDS.

### Direct Liabity of Technologic USA

44. These party Technologic USA is directly liable for the calls placed and as well as liable because any other result would impair the underlying purpose of the TCPA.

## TECHNOLOGIC USA SHOULD BE HELD LIABLE TO UPHOLD THE DETERRENT EFFECT AND PURPOSE OF THE TCPA

45. As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the

purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA.

46. Sellers are in the best position to monitor and police third party telemarketer's compliance with the TCPA and to hold otherwise would leave consumers without an effective remedy for telemarketing intrusions.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES AS A RESULT OF THE CALLS

47. Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

48. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

49. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

50. Defendant's calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

51. The Plaintiff has been harmed, injured, and damages by the calls including, but not limited to:

- Reduced Device Storage space
- Reduced data plan usage
- Invasion of privacy
- Lost time tending to text messages
- Decreased cell phone battery life
- More freqent charging of my cell phone resulting in reduced enjoyment and usage of my cell phone

- Reduced battery usage
- Annoyance
- Frustruation
- Anger

### The Plaintiff's cell phone is a residential number

52. The text messages were to the Plaintiff's cellular phonne 615-348-1977, 615-212-9191, and 615-331-7262, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

53. The actions of the defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the defendants violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) entitling the Plaintiff to recover $500-1500 per section violated or $6,000 per call for the Texas state violations.

54. The calls by the defendants violated Texas law by spoofing the caller ID's per 47

USC 227(e) which in turn violates the Texas statute entitling the Plaintiff to another 500-1500 per call.

## I. FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

### (Against All Defendants)

1. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent.

3. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5. Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

6. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

    b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

    c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

8. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

9. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

10. Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

### III. THIRD CLAIM FOR RELIEF: Violations of The Texas Business and Commerce Code 305.053

11. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

12. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

13. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

14. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Craig Cunningham prays for judgment against the defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 199 calls or $597,000

E. An award of $6000 in statutory damages arising from violations of the Texas Business and Commerce code 305.053 or $1,194,000

F.

G. An award to Mr. Cunningham of prejudgment interest, costs and attorneys' fees, as allowed by law and equity

H. Such further relief as the Court deems necessary, just, and proper.

Craig Cunningham
Plaintiff,          Jan 10th 2019

Pro-se 3000 Custer Road, ste 270-206, Plano, Tx 75075