Case 4:20-cv-00045-RWS-CAN   Document 1-2   Filed 01/17/20   Page 1 of 8 PageID #: 21
Case: 3:16-cv-00761-jdp   Document #: 170   Filed: 05/13/19   Page 1 of 19

ex B

Page 1

```
1                UNITED STATES DISTRICT COURT
2                WESTERN DISTRICT OF WISCONSIN
3
4    CRAIG CUNNINGHAM,              ) NO. 3:16-cv-00761-jdp
                                    )
5              Plaintiff,           )
                                    )
6         v.                        )
                                    )
7    MICHAEL MONTES, et al.,        )
                                    )
8              Defendants.          )
     _____)
9
10
11
12
                DEPOSITION OF CHRISTOPHER G. HALL
13
                        Orange, California
14
                       Friday, May 3, 2019
15
16
17
     Reported by:
18   Heidi Hummel-Grant
     CSR No. 12556
19
```

Page 2

```
 1              UNITED STATES DISTRICT COURT
 2              WESTERN DISTRICT OF WISCONSIN
 3
 4   CRAIG CUNNINGHAM,        ) NO. 3:16-cv-00761-jdp
                              )
 5          Plaintiff,        )
                              )
 6      v.                    )
                              )
 7   MICHAEL MONTES, et al.,  )
                              )
 8          Defendants.       )
     _____)
 9
10
11
12
13       Deposition of CHRISTOPHER G. HALL, taken on
14   behalf of Plaintiff, at 1122 East Lincoln Avenue,
15   Suite 203, Orange, California, beginning at 10:13 a.m.
16   and ending at 10:52 a.m., on Friday, May 3, 2019, before
17   Heidi Hummel-Grant, Certified Shorthand Reporter
18   No. 12556.
```

Page 3

```
 1   APPEARANCES:
 2   For Plaintiff:
 3      LAW OFFICES OF TODD M. FRIEDMAN, P.C.
        BY:  DAVID B. LEVIN, PRESENT TELEPHONICALLY
 4      333 Skokie Boulevard
        Suite 103
 5      Northbrook, Illinois 60062
        224.218.0882
 6      dlevin@toddflaw.com
 7   For Defendant:
 8      AXLEY BRYNELSON
        BY:  KEVIN D. TROST, PRESENT TELEPHONICALLY
 9      2 East Mifflin Street
        Suite 200
10      Madison, Wisconsin 53703
        ktrost@axley.com
```

Page 4

```
 1                     INDEX
 2   Witness:
 3   CHRISTOPHER G. HALL
 4
 5   Examination:                              Page
 6   BY MR. LEVIN                                5
 7   BY MR. TROST                               22
 8
 9                    EXHIBITS
         Description                           Page
10
     Exhibit 1   Subpoena to Testify at a Deposition  11
11               in a Civil Action
12   Exhibit 2   Spreadsheet                        12
```

Page 5

```
 1                    Orange, California
 2            Friday, May 3, 2019, 10:13 a.m. - 10:52 a.m.
 3
 4                    CHRISTOPHER G. HALL,
 5       called as a witness by and on behalf of Plaintiff,
 6   having been first duly sworn by the Certified Shorthand
 7   Reporter, was examined and testifies as follows:
 8
 9       MR. LEVIN:  Sir, just for the record, if you could
10   please state your full name?
11       THE WITNESS:  Christopher G. Hall, H-A-L-L.
12       MR. LEVIN:  Okay.
13          Let the record reflect this is the deposition of
14   Christopher Hall, pursuant to a subpoena served on
15   Connexum, LLC.
16          This deposition may be used at the trial of the
17   case of Craig Cunningham versus Michael Montes, U.S.
18   District Court, Western District of Wisconsin, Case
19   Number 16-cv-761 [sic].
20                    EXAMINATION
21   BY MR. LEVIN:
22   Q   Mr. Hall, have you ever given a deposition
23   before?
24   A   A couple of times.
25   Q   Okay.
```

Page 6

1  And under what context were those depositions
2  given?
3   A  They're in civil litigation.
4    I guess I don't quite understand your question.
5   Q  Did they relate to records kept by Connexum?
6   A  No.
7   Q  Did they involve litigation against Connexum?
8   A  Yes.
9   Q  Okay.
10    Well, you heard the court reporter's request of
11  us just a couple of minutes ago.  And you may have heard
12  some of the following instructions I'm going to give you
13  if you have given other depositions in the past.
14    But first of all, it's important -- and she said
15  especially today -- that we try not to talk over each
16  other.  People regularly do that in conversation without
17  thinking about it, but we want to make sure we have a
18  clean record and the court reporter is able to take down
19  everything that everybody is saying.  So I will do my
20  very best not to say anything until you answer your
21  questions [sic], and please let me finish the question
22  before you begin to answer, even if you think you know
23  what it is I'm getting at.
24    If for some reason you can't hear me or my
25  question is not clear, feel free to ask me to repeat the

Page 7

1  question.
2    Make sure, of course, that you keep your answers
3  out loud in a manner that can be taken down by the court
4  reporter.  So you can't say things like um-hum or hum-um
5  that we would normally say in conversation.  If it's,
6  for example, a yes or no question, please just say yes
7  or no.  That will make it very clear.
8    And if at any point you want to take a short
9  break, that's not a problem.  If there's a question
10  pending, I'll ask you to please answer the question and
11  we can take a short break and go off the record if we
12  need to.  Although I don't believe this going to last
13  all that long today.
14    Prior to your deposition today did you review
15  any documents or records to prepare for the deposition?
16   A  Yeah, yes.
17   Q  What did you review?
18   A  I reviewed the subpoena, the various emails that
19  you and I exchanged, as well as the data that was
20  contained in the file I sent you.
21   Q  Okay.
22    And did you discuss this deposition or the
23  records that were produced with anybody before we went
24  on the record here today?
25   A  No.

Page 8

1   Q  Did you have any conversation with Mr. Kettle
2  about whether he knows anything about this case or the
3  parties or the records?
4   A  Well, he knows about the records.  I discussed
5  that with him.
6   Q  Was that within the last few days before the
7  deposition or back when you produced those records for
8  us?
9   A  Both.  I wanted to refresh myself on the records
10  that the query returned.
11   Q  What is your current position with Connexum,
12  your job title?
13   A  I'm the managing member.
14   Q  Do you have ownership interest in the company?
15   A  The company is owned by another company.
16   Q  And what company is that?
17   A  The name of the company is Gawk Incorporated,
18  G-A-W-K.
19   Q  Do you have an ownership interest in Gawk
20  Incorporated?
21   A  I own some stock in that company, yes.
22   Q  Okay.
23    How long have you worked with Connexum?
24   A  Since January of 2016.
25   Q  And how long has Connexum been in business, if

Page 9

1  you know?
2   A  I believe the company was formed around 2011 or
3  2012.  I don't know exactly.
4   Q  Okay.
5    Was 2016 when the company was acquired by Gawk
6  Incorporated?
7   A  Yes.
8   Q  And that's when you began working with Connexum?
9   A  That is correct.
10   Q  Okay.
11    What are your daily duties and responsibilities
12  in relation to the business of Connexum?
13   A  As the managing member I'm involved in most all
14  aspects of the business operation.
15   Q  Okay.
16    And what kind of company is Connexum?  What is
17  its main business?
18   A  Connexum is a telephone services company.
19   Q  What sort of services does Connexum provide?
20   A  There's a family of services, but primarily long
21  distance telephone service to the United States and
22  Canada.
23   Q  And when you say you provide long distance
24  telephone service, you provide that directly to
25  customers and users?

Page 10

1  A  We provide it to other telephone companies.
2  Q  Is Technologic one such company?
3  A  Yes.
4  Q  So the other companies who are Connexum's
5  customers are using long distance calling minutes
6  through Connexum's system. Am I describing that
7  correctly?
8  A  You did pretty good, yeah.
9  Q  Okay.
10      Could you maybe explain in a little more detail
11  than that just so we understand the connection?
12  A  Maybe the only thing I would add is that we use
13  voice over IP technology to provide those telephone
14  services.
15  Q  And companies like Technologic pay Connexum for
16  the number of minutes they use in long distance service?
17  A  Typically, yes.
18  Q  Prior to becoming affiliated with Connexum have
19  you worked in other positions within the
20  telecommunication industry?
21  A  Yes, I have.
22  Q  How long have you been in that industry?
23  A  Since 1978.
24  Q  Okay.
25      If you could please take a look at the document

Page 11

1  the court reporter has marked as Exhibit Number 1?
2      (Exhibit 1 was marked for identification by the
3  Certified Shorthand Reporter, a copy of which is
4  attached hereto.)
5      THE WITNESS: I have it.
6      MR. LEVIN:
7  Q  That is the subpoena that we served on your
8  company for the deposition today.
9      If you could please turn to the final page of
10  that document that's labeled Rider to Subpoena for
11  Deposition?
12  A  I have that.
13  Q  Okay.
14      And you see there a list of four topics that we
15  wanted to discuss on the deposition here today?
16  A  I see those.
17  Q  Okay.
18      Would you say that you have personal knowledge
19  that would qualify you to discuss each of those four
20  topics?
21  A  Yes.
22  Q  Okay. Great. Thank you.
23      Now I'd like you to take a look at was
24  previously marked by the court reporter as Exhibit
25  Number 2.

Page 12

1      (Exhibit 2 was marked for identification by the
2  Certified Shorthand Reporter, a copy of which is
3  attached hereto.)
4      THE WITNESS: I have that.
5      MR. LEVIN:
6  Q  Does that appear to you to be a copy of the
7  records Technologic [sic] previously produced to me
8  pursuant a subpoena for documents that was served in
9  this case?
10  A  Yes, these are the call records that Connexum
11  produced in response to the subpoena. This was not
12  produced by Technologic.
13  Q  Correct. Understood.
14      So I will represent to you that all I did was
15  convert that spreadsheet to a PDF so it could be easily
16  sent to the court reporter and printed for the
17  deposition here today.
18      If you can tell me, generally speaking, what do
19  those records represent?
20  A  Each of these records represents a telephone
21  call that transited the Connexum network. The data
22  provided is the date of the call, the time of day the
23  call was commenced, who the call was from, who the call
24  was to, the name of our customer that originated the
25  call and the account bill duration of each call.

Page 13

1  Q  Is that account bill duration in minutes?
2  A  That's a good point. It's in seconds.
3  Q  Okay.
4      Yeah, that makes sense. I guess there would be
5  some very long phone calls here if that was in minutes.
6  A  That's right. 1,992 minutes would be an awfully
7  long phone call.
8  Q  Right. So the column that's labeled from user,
9  that is a number that was -- from which the phone call
10  was placed; is that correct?
11  A  That's the telephone number we received from
12  Technologic as the source telephone number -- or we call
13  it the caller line identifier, CLI -- from where the
14  call was placed.
15  Q  Is that the phone number that would show up on
16  the call recipient's caller ID?
17  A  Yes.
18  Q  And do you have any way to independently verify
19  those numbers, or that's just what's provided through
20  Technologic's records?
21  A  We have no way to verify it. All we do is pass
22  along whatever we get in the voice over IP signaling
23  string from our customer.
24  Q  So essentially Connexum is providing the method
25  to connect the call from the person placing it to the

Page 14

1  end user; is that correct?
2  A  We provide the network to do that. I don't know
3  if that is a method or not.
4  Q  Okay. Understood.
5     And the column that says to user, that is the
6  phone number which was dialed as the recipient of the
7  call; is that right?
8  A  Correct.
9  Q  Okay.
10 A  I might comment that to some people you might
11 expect to see a one in front of all these numbers. The
12 way this data is presented is as the -- the area code
13 and the phone number with no one in the front. So for
14 example, on the first line, that call was not to Country
15 Code 61; it was to area code (615)212-9191.
16 Q  Understood.
17    It does appear at the bottom of the first page
18 there are three calls where there is a one preceding the
19 615 area code.
20    Is that indicative of anything in particular?
21 A  Nothing in particular. Sometimes, especially
22 from international customers like Technologic, we'll get
23 the one. But most of our CDR are just the ten digit
24 without the one.
25 Q  It appears that all of the calls reflected in

Page 15

1  Exhibit Number 2 were placed through the account with
2  your customer Technologic; correct?
3  A  Yes, that's the data you requested in your
4  initial subpoena.
5  Q  You mentioned international customers like
6  Technologic. Do you know where they're located?
7  A  Panama.
8  Q  How long has Connexum done business with
9  Technologic?
10 A  They were a customer when we acquired Connexum
11 in 2016. So prior to 2016. I honestly don't know
12 exactly when they started.
13 Q  Do you have any knowledge of the type of
14 customers who use Technologic's calling system?
15 A  No, I don't.
16 Q  So are the individuals at Technologic with whom
17 your company deals all located in Panama?
18 A  To the best of my knowledge, yes.
19 Q  Okay.
20    We had a conversation off the record before we
21 started the deposition today. So I'm asking you --
22 already knowing the answer to this, but so we have it on
23 the record -- did you actually create the data that is
24 in the spreadsheet marked as Exhibit Number 2?
25 A  No.

Page 16

1  Q  Okay.
2     How was this spreadsheet created?
3  A  Scott Kettle who handles this type of
4  transaction for our company is the one that actually
5  queried this data from the database of all of our,
6  literally, billions of call records.
7  Q  Can you explain for me how that database query
8  is run to come up with the data that is in spreadsheet?
9  A  Yes. He inputs the date range, which we
10 provided after you gave us the date range that you were
11 looking for, which I think was January 1st through
12 December -- January 1st, 2015, through December 31st,
13 2016, and he takes the customer number and writes a
14 database query that then is run against the pile of data
15 to get the results.
16 Q  So are you saying that this spreadsheet
17 represents the entire universe of calls that were placed
18 to the three telephone numbers listed in the subpoena
19 through Connexum's system between January 1st of 2015
20 and December 31st of 2016?
21 A  That is correct. It was not limited to a
22 specific account so any calls that transited our network
23 to those three numbers would have been returned.
24    MR. LEVIN: Hi. Sorry about that. I had a
25 connection issue. I had to drop off the call and

Page 17

1  redial there.
2     THE WITNESS: No problem.
3     Did you hear my answer?
4     MR. LEVIN: Yeah, could you please read back the
5  last question and answer?
6     THE REPORTER: Yes.
7     (The record is read by the reporter.)
8     MR. LEVIN: Okay. Thank you.
9  Q  But even though you did not limit the account,
10 it does appear that all of the calls were placed through
11 your company's account with Technologic -- or, I'm
12 sorry, I should say Technologic's account with your
13 company; is that correct?
14 A  That's correct.
15 Q  Is there anything about this spreadsheet as, you
16 look at it, that would give you any reason to doubt the
17 data produced through the query?
18 A  No.
19 Q  Do you know whether Technologic would still have
20 record of any of these telephone calls as we sit here
21 today?
22 A  I don't know.
23 Q  Have you ever discussed with anyone at
24 Technologic how long they maintain those records?
25 A  No.

Page 18

1  Q  Are you familiar with the defendant in this case
2  named Michael Montes?
3  A  I know of Mr. Montes. He has another company
4  called MYADGUYS, I believe. And as the representative
5  of MYADGUYS, he was a sales agent for Connexum for a
6  period of time prior to when we acquired the company.
7  He's no longer a sales agent for the company.
8  Q  So through the MYADGUYS company Mr. Montes was a
9  sales agent for Connexum. But that was before your
10 company acquired Connexum?
11 A  Correct.
12 Q  And that his relationship as a sales agent with
13 Connexum terminated prior to you being becoming involved
14 with Connexum?
15 A  The last account that I saw signed up under his
16 agent ID was from 2014.
17 Q  At that time he was operating under the name
18 MYADGUYS.com, LLC?
19 A  That's what our administrative records reflect.
20    Like I said, I wasn't here so I don't know for
21 sure. All I can do is look at the history.
22 Q  Okay.
23    What sort of records did you see that showed you
24 that?
25 A  The -- the log in the sales agent registration

Page 19

1  database and then the date of the sign up of the two
2  customers the he signed up during that time, 2014.
3  Q  Have you ever heard of a company run by
4  Mr. Montes under the name TollFreeZone.com Incorporated?
5  A  Well, I saw it in your list of questions here.
6  Q  Had you ever heard of it before that?
7  A  No.
8  Q  Do your company's records show having -- that
9  you've done any business with a company by that name?
10 A  We have no such records.
11 Q  Do you know anything about any other type of
12 businesses in which Mr. Montes has been involved other
13 than as a sales agent for Connexum?
14 A  I do not.
15 Q  How would you describe the nature of the
16 business conducted by Technologic?
17    MR. TROST: Object to foundation.
18    MR. LEVIN:
19 Q  Do you know anything about the nature of the
20 business conducted by Technologic?
21 A  Well, they send us phone calls. That's as much
22 as I know. I don't know what else they do. I -- I
23 don't know who else they send phone calls to or from.
24 But they are a customer in good standing with us.
25 Q  Do you know anything about the nature or

Page 20

1  contents of any of the telephone calls reflected in
2  Exhibit Number 2?
3  A  No.
4  Q  Do you know if Mr. Kettle or anyone else at your
5  company has spoken with Michael Montes recently?
6  A  I don't know.
7  Q  And the information in Exhibit Number 2
8  accurately reflects records kept by Connexum in the
9  ordinary course of its business?
10 A  That's correct.
11 Q  And each of these calls that are listed, are
12 they instantly logged into Connexum's records at the
13 date and time the call is placed?
14 A  More or less. Sometimes there's a little
15 latency in writing CDR records -- we're talking about
16 seconds and -- you know, or maybe a few minutes, purely
17 due to technical data processing transactional delays --
18 but within -- within minutes, you know, and --
19 Q  And that's -- I'm sorry, I didn't mean to
20 interrupt. Were you finished with your answer?
21 A  Oh, yeah. Since the last call record was
22 August 11, 2016, I can confidently say that represents
23 any and all records that ever transited our system.
24 Q  And the records are tracked through an automated
25 procedure; correct?

Page 21

1  A  Correct.
2  Q  Okay.
3     No, there's no human intervention in the
4  creation of these records outside of exporting the data
5  to a spreadsheet?
6  A  That's correct.
7  Q  Did Mr. Kettle discuss with you specifically how
8  he went about creating this spreadsheet, or are you just
9  testifying based on your knowledge of how it's done?
10 A  I'm testifying based on my knowledge of how it's
11 done.
12    We do this a couple, two or three times a month.
13 Getting a subpoena for call records is not uncommon here
14 from mostly law enforcement but sometimes also in other
15 civil litigation. So it's something that we do
16 routinely.
17 Q  The address you provided to my paralegal,
18 1122 East Lincoln Avenue, Suite 203, in Orange,
19 California, is that the current business address of
20 Connexum?
21 A  Yes.
22 Q  And Connexum's system did not reflect any other
23 telephone calls in 2015 or 2016 to any of the three
24 phone numbers listed in the subpoenas outside of those
25 reflected in Exhibit 2; correct?

Page 22

1 A That is correct.
2 MR. LEVIN: Okay.
3 I have nothing further. Mr. Trost may have some
4 questions for you.
5 EXAMINATION
6 BY MR. TROST:
7 Q Mr. Hall, it's a pleasure to speak with you.
8 I only have a few questions for you.
9 A That's a pleasure to hear.
10 Q I want to make sure I understand what Exhibit 2
11 contains.
12 My understanding is that the calls listed on
13 Exhibit 2 represent long distance calls made to three
14 specific phone numbers between January of 2015 and
15 December of 2016, and the calls associated are with --
16 well, those are calls that went through Connexum's
17 system; is that right?
18 A That's right.
19 Q Okay.
20 And just to be sure, Connexum does not know who
21 actually made the calls; correct?
22 A That's correct. We don't know -- nothing in the
23 data stream we get tells us that. All we know is the
24 caller ID that the call came from.
25 Q Right. The caller ID and the account that it's

Page 23

1 associated with?
2 A Correct.
3 Q And Connexum doesn't know the substance of the
4 calls, itself, just the duration in terms of seconds?
5 A That is correct. In fact, we have no way to
6 know the audio content of the call. It's technically
7 impossible.
8 Q Now, with respect to Technologic, LLC, which is
9 the account listed for all these calls, is there a
10 mailing or physical address associated with that
11 account?
12 A Yes, we've got an address in our customer record
13 file, which I think I provided to Mr. Levin before. But
14 I'll be happy to give it to you again now. Please
15 standby while I look it up.
16 Avenue Samuel Luis, then Y like and in Spanish,
17 Calle, C-A-L-L-E, 58, in Panama City, Panama.
18 Q Great. Thank you.
19 Do you or Connexum have any knowledge whether
20 Technologic, LLC, which is listed under the account
21 heading on Exhibit 2, is associated with a company
22 called Technologic, Inc.?
23 A I don't know. Let me check something real
24 quick.
25 No, I can't tell. That's -- the only name we

Page 24

1 know them under is Technologic, LLC.
2 Q Okay.
3 Final question for you: Do you have any
4 knowledge whether Michael Montes or a company called
5 TollFreeBill.com is associated in any way with the calls
6 listed on Exhibit 2?
7 A Have no idea. No, I do not.
8 MR. TROST: Okay.
9 Thank you Mr. Hall.
10 THE WITNESS: You're welcome.
11 MR. LEVIN: I do not have any other questions.
12 MR. TROST: David, do you want to continue on and do
13 Mr. Kettles dep or --
14 THE REPORTER: And we're off the record?
15 MR. TROST: Yeah, we can go off the record.
16 (A discussion is held off the record.)
17 THE REPORTER: And we're back on the record.
18 MR. LEVIN: So Mr. Hall, I'm going to request that
19 the court reporter prepare a copy of the transcript of
20 this deposition. And if this case goes to trial, which
21 is scheduled to start on June 10th, we will likely use
22 this deposition transcript as -- with you as a witness
23 for that trial, essentially, in lieu of having you have
24 to appear in person in Wisconsin.
25 So you have a right to review the transcript and

Page 25

1 sign off on it before it becomes final. And if there
2 were any misspellings or errors in the transcription,
3 you would have a right to fill out what's called an
4 errata sheet in order to correct those. You can't
5 change the nature of your testimony, it's only just to
6 correct any errors in the transcription. Or it's up to
7 you if you want to indicate that you waive your
8 signature, then the transcript just becomes final once
9 the court reporter has typed it up.
10 Certainly I'm sure you know I'm not your
11 attorney, I'm not representing you, I can't tell you
12 which one you should do. But I'm letting you know you
13 have that choice. And if you have questions regarding
14 that choice, I can try to answer them for you.
15 THE WITNESS: No, I never like signing anything I
16 haven't had a chance to look at. So I'll promise to
17 promptly review it and then return it, and hopefully
18 there will be no commentary.
19 MR. LEVIN: Okay. Thank you.
20 So I guess the witness is reserving his
21 signature then for now.
22 THE REPORTER: Before we go off the record,
23 Mr. Trost, do you need a copy?
24 MR. TROST: I'm not going to make a decision on this
25 right now. But I took the job number down that you

Page 26

1  gave me at the beginning so I can order a copy if I
2  need to.
3       THE REPORTER: Thank you.
4          And we're off the record.
5          (End of Proceedings. Declaration of penalty of
6  perjury on the following page hereof.)
7          (Deposition concluded at 10:52 a.m.)

Page 27

1          Certification of Court Reporter
2               Federal Jurat
3
4       I, the undersigned, a Certified Shorthand
5  Reporter of the State of California do hereby certify:
6       That the foregoing proceedings were taken
7  before me at the time and place herein set forth; that
8  any witnesses in the foregoing proceedings, prior to
9  testifying, were placed under oath; that a verbatim
10 record of the proceedings was made by me using machine
11 shorthand, which was thereafter transcribed under my
12 direction; further, that the foregoing is an accurate
13 transcription thereof.
14      That before completion of the deposition a
15 review of the transcript was requested.
16      I further certify that I am neither
17 financially interested in the action nor a relative or
18 employee of any of the parties.
19      IN WITNESS WHEREOF, I hereby subscribe my name
20 this 12th day of May, 2019.
21
22
23
24      *Heidi Hummel-Grant*
         Heidi Hummel-Grant
25      Certified Shorthand Reporter No. 12556

Page 28

1              Veritext Legal Solutions
                 1100 Superior Ave
2                    Suite 1820
                 Cleveland, Ohio 44114
3                Phone: 216-523-1313
4  May 13, 2019
5  Mr. Christopher G. Hall
   1122 E. Lincoln Ave., #203
6  Orange, CA 92865
   Case Name: Cunningham, Craig v. Montes, Michael, et al.
7
   Veritext Reference Number: 3295805
8
   Deposition Date: 5/3/2019
9
   Dear Sir/Madam:
10
   Enclosed you will find a transcript of your deposition.
11
   As the reading and signing have not been expressly
12
   waived, please review the transcript and note any
13
   changes or corrections on the errata sheet
14
   included, indicating the page, line number, change and
15
   reason for the change. Sign at the bottom of the sheet
16
   in the presence of a notary and forward the errata sheet
17
   back to us at the address shown above or email to
18
   production-midwest@veritext.com.
19
   If the errata is not returned within thirty days of your receipt of
20
   this letter, the reading and signing will be deemed waived.
21
   Sincerely,
22
23 Production Department
24
25 NO NOTARY REQUIRED IN CA

Page 29

1          DEPOSITION REVIEW
           CERTIFICATION OF WITNESS
2
           ASSIGNMENT REFERENCE NO: 3295805
3          CASE NAME: Cunningham, Craig v. Montes, Michael, et al.
           DATE OF DEPOSITION: 5/3/2019
4          WITNESS' NAME: Christopher G. Hall
5          In accordance with the Rules of Civil
   Procedure, I have read the entire transcript of
6  my testimony or it has been read to me.
7       I have made no changes to the testimony
   as transcribed by the court reporter.
8
   _____     _____
9  Date                Christopher G. Hall
10      Sworn to and subscribed before me, a
   Notary Public in and for the State and County,
11 the referenced witness did personally appear
   and acknowledge that:
12
        They have read the transcript;
13      They signed the foregoing Sworn
        Statement; and
14      Their execution of this Statement is of
        their free act and deed.
15
        I have affixed my name and official seal
16
   this _____ day of _____, 20____.
17
18      Notary Public
19
        Commission Expiration Date
20
21
22
23
24
25